BUSTER, et al, vs WRIGHT, et al.

Opinion delivered September 25, 1902.

1.  *Indian Laws—Occupation Tax—Removal for Non-Payment.*

    The Creek Nation possesses full jurisdiction over all persons and property within the limits of the Nation; can prescribe and collect an occupation tax from non-citizens and the Interior Department prior to the passage of Act of Congress May 27, 1902, had power to remove, as an intruder, any non-citizen refusing or failing to pay such tax. Decided on authority of Maxey vs Wright, 3 Ind. Ter. Rep. p. 243, and 105 Fed. 1003, on appeal.

2.  *Injunction—Restraining Unlawful Method of Collecting Occupation Tax.*

    Although, prior to Act of Congress May 27, 1902, the Interior Department had the right to enforce the penalty of removal for being an intruder as against a non-citizen failing to pay an Indian occupation tax, a threat to close the business house of such non-citizen unless the tax is paid is a threat of unlawful interference with such person's rights inasmuch as there is no statute providing authority for such means of collecting a debt, and is ground for an injunction.

3.  *Indian Laws—Occupation Tax—Method of Enforcement.*

    Since property of non-citizens in Indian nations cannot be seized and their places of business closed in an endeavor to enforce the payment of Indian occupation taxes; and since the Act of Congress May 27, 1902, provides that owners of lots in towns designated as townsites may not be removed or deported from the Indian Territory the only method left for the collection of these taxes is through the ordinary channels of the courts.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action by Buster & Jones and others against J. Geo. Wright and others. Judgment for defendants. Plaintiffs appeal. Reversed.

This is an action in equity brought by the plaintiffs to enjoin the defendants, who are officers and agents of the interior department of the United States, except Cobb and West, who are officers of the Creek Nation, from carrying into effect certain threats alleged to have been made by them, to the effect that unless they (the plaintiffs) would pay to them a certain amount of money claimed to be due the Creek Nation as a "tax on merchants, levied by the authorities of the Creek Nation for the privilege of doing business in that nation." they would close up their place of business by 1 o'clock of that day, and proceed to procure their removal from the Indian Territory. The complaint, omitting the caption, after alleging that the plaintiffs were all citizens of the United States, and stating the official position of defendants, is as follows: "That plaintiffs further state: 'That on the 21st day of August 1901, the defendant, Guy P. Cobb went to the town of Wagoner, accompanied by John West, United States Indian police, and notified the Wagoner Hardware Company that unless they paid a certain sum demanded by said Cobb by one o'clock of that day that he would close up their place of business, and that if they attempted to open up their said business that they would be reported by the Indian inspector to the secretary of the interior, and an order asked for their removal from the Indian Territory, as it was the intention of the interior department to prevent them from doing business any further until they paid the sum demanded, which it is claimed is a tax on merchants levied by the authorities of the Creek Nation for the privilege of doing business in the Creek Nation. That said Cobb made a similar threat to each of the other defendants, and notified them that he had his Indian police ready for the purpose of carrying out said threats, and that they cer-

tainly would be closed at the time designated unless they paid the sum demanded of them. That the plaintiffs immediately served notice upon them that they would apply to this honorable court; that they would apply for a restraining order on this date, enjoining and restraining them, and each of them, from closing up their said places of business, or in any manner interfering with them in conducting their said business. And that said Cobb then stated that he would defer further action until this application could be presented. That plaintiffs further state that they all have stocks of merchandise ranging in value from $2,000 to $20,000, and that they would be irreparably injured should their places of business be closed up by said defendants; but they believe, and so state the fact to be, that unless the defendants are restrained by this honorable court from carrying out their said threats, that they will put the same into execution, and close up their business and remove them from the Indian Territory. That plaintiffs further state that the tax levied on them by the Creek Nation is illegal and unjust, and levied without any authority or legal right to collect or demand the same from these plaintiffs, or in any manner interfere with them in their business, for the following reasons, to wit: First. Because it is a tax imposed by the Creek Nation, which is no part of the government of the United States, and the officers of the United States have no authority of law to collect the same. Second. That on the first day of March, 1901, the congress of the United States ratified an agreement with the Creek tribe of Indians, and thereafter, to wit, on the 25th day of May, 1901, the council of the Creek Nation also ratified said agreement, and thereafter, to wit, on the —— day of July, 1901, the President of the United States issued his proclamation, proclaiming said agreement to be the law; that by the terms of said agreement the lands within the incorporated town of Wagoner, where these plaintiffs live, was segregated from the public domain of the Creek Nation, and set apart as a town site, and the same has been surveyed,

platted, and appraised by and under the direction of the government of the United States and of the Creek Nation; and said agreement provides, among other things, that citizens of the United States residing within incorporated towns, and who own improvements on lots therein, should have the right to purchase the same at one-half the appraised value, the payments to be made as follows: ten per cent. within sixty days after notice of appraisement, fifteen per cent. additional within six months from notice of appraisement, and twenty-five per cent. each year for the remaining three years; that the Wagoner Hardware Company, Buster & Jones, and others of the above-named plaintiffs are the owners of the improvements or buildings in which they are doing business, and that the land upon which the same is located has been listed to them and appraised by the town-site commission, and said appraisement has been approved by the secretary of the interior, and notice thereof has been served on these plaintiffs; and that they are ready and willing and intend to pay the amount of said appraisement according to the terms of said agreement, and are not now in default of any payment. Third. That by reason of said agreement, and the setting apart of said town, and the listing of the property to the plaintiffs, that the Creek Nation has lost all jurisdiction, if it ever had any, to tax these plaintiffs, and the above-named defendants have no legal authority or right to demand said tax, or to interfere with said plaintiffs in the transaction of their said business. The premises considered, plaintiffs pray that your honor grant a temporary restraining order herein, enjoining and restraining the defendants, and each of them, from closing up their places of business, or carrying out their threats to remove the plaintiffs from the Indian Territory, or in any manner interfering with the plaintiffs; that the defendants be required to make answer to this complaint; and that upon a final hearing such restraining order be made perpetual; and for such other and further relief in the premises as to your honor shall seem

mcet and proper." To the complaint the deendants filed a general demurrer "that the complaint did not state facts sufficient to constitute a cause of action," and at the same time the following agreement of the parties was filed: "It is hereby stipulated and agreed by and between the parties plaintiff and Maxey & Hunt, their attorneys of record, and the parties defendant and their attorney of record, P. L. Soper, United States district attorney, that in passing upon the demurrer to be filed herein the court may take judicial notice of, and consider in evidence the same as if incorporated in the bill of complaint, the permit law of the Muskogee Nation, passed November 5, 1900, a copy of which is hereto attached, marked 'Exhibit A,' and made a part hereof, and the subsequent act of the Muskogee Nation, approved by the principal chief on May 25, 1900, and approved by the President of the United States July 27, 1901, relating to the expenses of collecting the revenue of the Creek Nation, a copy of which is hereto attached, marked 'Exhibit B,' and made a part hereof, together with the letter of transmittal to the United States Indian inspector of the Indian Territory, connected therewith, and also the rules and regulations of the department of the interior, providing for the collection of the revenue, of whatever character and description, imposed by the laws of the Creek Nation, to the end that there may be a speedy decision of the matters involved in said complaint,—there being no dispute between the parties plaintiff and defendant as to the facts,— and for the purpose of simplifying the issues in said cause." The court, considering the facts set forth in the agreement as if they had been set up in the complaint and demurred to, sustained the demurrer, and, the plaintiffs refusing to plead, judgment was rendered in favor of the defendants. Exceptions were duly saved, and the cause regularly appealed.

     *N. B. Maxey,* *W. T. Hunt,* and *Davis & Garnett,* for appellants.

*P. L. Soper*, U. S. Atty., for appellees.

CLAYTON, J. The complaint alleges two acts which the defendants were threatening to do: First, to close up the plaintiff's places of business; and, second, to procure their removal from the territory, as intruders, if they did not pay the amount claimed to be due the Creek Nation. If either one of these statements of fact constitutes a cause of action, although the other may be bad, the demurrer, being a general one, should have been overruled, instead of having been sustained, as it was by the court below.

As to the power of the interior department of the United States government to remove white men from the Indian Territory who refuse to pay such amounts as may be required by the laws of the Creek Nation for the privilege of being permitted to come into that nation and to engage in business therein, we simply refer to the case of Maxey vs Wright (heretofore decided by us and which was affirmed by the United States Circuit Court of Appeals for the Eighth Circuit 3 Ind. Ter. Rep. 243, (54 S. W. 807.) In that case we decided the question against the contention of the plaintiffs; and, if this were the only ground alleged in the complaint for an injunction, the action of the court below in sustaining the demurrer would be upheld. But the threat to remove plaintiffs from the Indian Territory was not the principal ground set up in the complaint. It was "that unless they (plaintiffs) paid a certain sum demanded, * * * by one o'clock of that day, they would close up their place of business, and, if they attempted to open up their said places of business, that they (plaintiffs) would be reported by the Indian inspector to the secretary of the interior, and an order asked for their removal from the Indian Territory, to prevent them from doing business any further until they paid the sum demanded." The contemplated removal depended on the condition of an attempt to open up after their business houses should have been closed. The penalty for their nonpayment, or for their having

(21)

been found to be intruders, was not that they should be removed from the territory, as provided by the treaty and the law, but that their business houses should be closed until payment should be made. Statutes that affect personal liberties or property rights without a trial by jury or a judgment of a court must be strictly construed in favor of the individual right. While by the treaty and the statutes the secretary of the interior may find the fact that a man is an intruder in the Creek Nation, because he fails to comply with the conditions upon which he was permitted to enter, and put him out, he cannot collect the debt by closing his place of business. The one is the enforcement of a penalty for being an intruder; the other, if allowed, would be the means of collecting a debt. The one, the law provides for; the other, it does not. We know of no provision of treaty or statute law providing for such a remedy to be enforced by the interior department of the government. While that department is clothed with vast power in and over the Indian Territory and its people and might, possibly, within the law, undertake the collection of this debt or royalty, or whatever it may be called, yet it must do so by some remedy pointed out by statute or the judgment of a court. Even if this should be considered the collection of a tax,—and, in our opinion, it is not,—it would be unlawful, because there is no statute providing that taxes may be collected in this way. Statutes frequently provide that the payment of taxes may be enforced by a seizure and sale by the proper officer of a sufficient amount of the delinquent's personal property, and applying the proceeds to the payment of the tax, and this is not unconstitutional; but, to authorize it, it is imperative that there be a statute providing that it may be collected in that way. Conceding, then, that the secretary of the interior had the power to collect, there is no statute empowering him or his officers and agents to resort to this summary proceeding. Especially is this true where the property seized is not to be sold, and the surplus turned back to the owner, but the whole contents of the store

building is to be locked up and held, and all business suspended, until the delinquent shall be coerced into payment. We are therefore of the opinion that in this particular the complaint stated a good ground for an injunction, and that the court erred in sustaining the demurrer to it.

Since the entry of the decree in the court below, congress, by act approved May 27, 1902, has provided "that it shall hereafter be unlawful to remove or deport any person from the Indian Territory who is in lawful possession of any lots or parcels of land in any town or city in the Indian Territory which has been designated as a town site under existing laws or treaties." The complaint, in effect, alleges that Wagoner has been so designated and that the plaintiffs are in lawful possession of lots therein; and as we hold that the property of the plaintiffs cannot be seized and the doors of their business houses closed, and as the act referred to provides that the plaintiffs cannot be removed or deported from the Indian Territory, it follows that the only method left for the collection of the debt is through the ordinary channels of the courts.

For the error above set out, the decree of the court below is reversed.